UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 20-61308 |
| A.R.M. OPCO, Inc., | ) | Chapter 11 |
| Debtor. | ) | Judge  Kendig |
| _____/ | | |

### OBJECTION OF SWIFT FINANCIAL, LLC TO
### DEBTOR'S MOTION TO USE CASH COLLATERAL

1.      Swift Financial, LLC, as servicing agent for WebBank (collectively "Swift" unless

otherwise indicated), objects to Debtor's motion for interim and final orders permitting the use of

cash collateral (the "Motion" -- Dkt. No. 9). Swift holds a perfected security interest in all of

Debtor's business assets, and the Motion and Debtor's proposed order granting the Motion fail to

afford adequate protection to Swift's secured position as required by the Code.

2.      On March 9, 2020, WebBank lent Debtor $100,000 pursuant to loan documents attached

to the Motion as Exhibit B. That loan is secured by all of Debtor's business assets, and WebBank

perfected its security interest on March 9, 2020.

3.      Debtor has scheduled its current debt to Swift as $80,383.14. Swift believes that amount is reasonably accurate, but reserves the right to correct or object to that scheduled amount once it has an opportunity to fully calculate the total amount due.[1]

4.      In terms of priority among Debtor's secured creditors, Swift believes that it is second only to Austin Financial Services ("AFS").

5.      In the Motion, Debtor offers Swift replacement liens on its collateral under Section 361(2) and alleges that such liens, without more, will provide Swift with adequate protection as required by Section 363(e) of the Code.

6.      Debtor asserts two related bases for its position that Swift's position will be adequately protected if Debtor is granted the right to use cash collateral. First, Debtor argues that the orderly liquidation value of its business assets exceeds $4,000,000, which, if true, would mean that both Swift and AFS are over secured. Second, Debtor argues that its status as a going concern means that it will be generating additional revenue from its use of the cash collateral. Neither assertion is persuasive.

7.      Although it may be true that Debtor's business assets have an orderly liquidation value in excess of $4,000,000, in light of Debtor's simultaneous request that the Court approve the sale of all of those assets for $2,376,696, that asserted asset valuation is meaningless.[2]  According to the Sale Motion, that proposed sale amount is less than the amount that Debtor currently owes AFS, its senior secured creditor.

---

[1]      It is unclear how Debtor calculated the erroneous amount of $71,140, which is stated in the Motion.

[2]      *See* Debtor's motion to sell substantially all of its assets ("Sale Motion" – Dkt. No. 13).

8. Accordingly, replacement liens on Debtor's business assets, even if those assets are worth what Debtor says they are, provides Swift with no protection at all, much less adequate protection.[3]

9. Moreover, Debtor's argument that its value as a going concern provides Swift with adequate protection is not accurate. The budget attached to the Motion as Dkt. No. 9-6 appears to depict no operational activity by Debtor until at least week 5 (the week ending September 26, 2020). That week is the first time any labor costs appear on the budget. A fair reading of the budget indicates that the primary purpose of obtaining access to cash collateral is to pay a substantial ($90,000) employee insurance premium in week one.

10. Furthermore, it strains credulity for Debtor to assert that if it is able to use cash collateral it will be a going concern when in the same breath it is seeking to promptly sell all of its business assets.

11. In its Memorandum supporting the Motion (Dkt. No. 10), Debtor asserts that its budget shows that Debtor will use its assets to generate "new accounts receivable and cash" (paragraph 3), thereby permitting Debtor to reorganize. That assertion is wholly inconsistent with both the budget, which shows no such operational activity, and with the relief that Debtor is seeking in the Sale Motion.

12. In addition, in its Memorandum supporting the Motion (Dkt. No. 10), Debtor cites several cases in which courts have granted access to cash collateral because of the going concern status of the debtors in those cases. In this case, however, Debtor has informed the Court in its Memorandum supporting the Sale Motion (Dkt. No. 14) that Debtor is not a going concern – its

---

[3] Debtor asserts at paragraph 11 of the Sale Motion that all of its secured lenders consent to the proposed sale. That is not accurate – Swift has never been consulted about the proposed sale, and has given no consent. Swift will separately file its response to the Sale Motion.

only options are to sell its assets or to liquidate. Accordingly, the cases Debtor relies on to support the Motion are inapposite.

13.     In the Memorandum supporting the Motion (Dkt. No. 10), Debtor cites cases that hold that the assets of a going concern should be valued based on "commercial reasonableness." Debtor, of course, is not a going concern – it is on the brink of liquidating or selling all of its assets.  Those cases are not applicable.

14.     In summary, the Motion should be denied because it and the proposed order granting the Motion fail to provide any protection to Swift's secured interest in Debtor's business assets, much less the adequate protection required by the Code.

Respectfully submitted,

/s/ W. David Arnold
W. David Arnold (0038260)
Robison, Curphey & O'Connell, LLC
Ninth Floor, Four SeaGate
Toledo, Ohio 43604
(419) 249-7900
(419) 249-7911 – facsimile
darnold@rcolaw.com

Attorneys for Swift Financial, LLC,
as servicing agent for WebBank

Dated:  August 22, 2020

## CERTIFICATE OF SERVICE

I certify that on August 22, 2020, a copy of the foregoing Objection was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

/s/ W. David Arnold